Gants, J.
The Commonwealth of Massachusetts has petitioned this Court to commit the respondent, Lawrence Louhisdon, as a sexually dangerous person under G.L.c. 123A. Louhisdon now moves this Court to exclude the report and the testimony of Dr. Ira Silverman, the Commonwealth’s designated expert regarding Louhisdon’s alleged sexual dangerousness, on the grounds that Dr. Silverman, after this petition was filed and after counsel had been appointed to represent Louhisdon, nonetheless interviewed Louhisdon without the knowledge or approval of Louhisdon’s attorney, in violation of Rule 4.2 of the Massachusetts Rules of Professional Conduct, as incorporated in Supreme Judicial Court Rule 3:07 (“Rule 4.2”). After an evidentiaiy hearing, for the reasons stated below, the motion to exclude Dr. Silverman’s report and testimony is ALLOWED.
FINDINGS OF FACT
Louhisdon is a 22-year-old male who has been incarcerated since August 1996 for indecent assault and battery on a child under 14. On February 20, 2001, the Commonwealth filed this petition seeking to commit Louhisdon to the Massachusetts Treatment Center for an indeterminate period of one day to life. On February 21, 2001, a hearing was held before a different judge of this Court in which Louhisdon was brought before the Court, served with the petition, and determined to be indigent. The Court on that date ordered that counsel be appointed to represent him. A status date of February 28, 2001 was then set.
In such cases, as the Assistant District Attorney knows (since she has approximately 20 other sexually dangerous persons cases pending in this Court), the Clerk’s Office notifies the Committee for Public Counsel Services (“CPCS”) that an attorney is needed, and CPCS finds a qualified attorney on its list to represent the respondent. In this case, by February 22, 2001, CPCS had arranged for Attorney Micháel Farrington to represent Louhisdon.
*23 Since Louhisdon was scheduled to be released on or about March 1, 2001, the District Attorney decided to file a motion on February 28, 2001 for Louhisdon to be temporarily committed pending his probable cause hearing. Under Commonwealth v. Bruno, the finding of probable cause needed to justify such a temporary commitment cannot be made without expert testimony, whether live or in a written report. 432 Mass. 489, 511 (2000). The Assistant District Attorney, knowing this, retained Dr. Ira Silverman on February 21, 2001 to prepare an expert’s report by February 28.[1] Dr. Silverman charges the Commonwealth $ 100 per hour to review records, and $550 per half-day of testimony ($800 for a full day).
Dr. Silverman had no specific memory of his conversation with the District Attorney’s Office regarding his retention, but he testified that his practice upon being retained was to ask for the name of the respondent’s attorney. He was not given any such name on February 21. It was also his practice after he had reviewed the respondent’s records to telephone the District Attorney’s Office and ask whether he can interview the respondent. In this telephone call, he routinely asks if the respondent has an attorney and, if so, whom, because, if an attorney has been appointed, he will speak to the attorney before interviewing his client. Dr. Silverman did not specifically recall whether he had such a telephone call here, but there is no reason to believe that he deviated from his routine practice in this case. Dr. Silverman was never told that the respondent had an attorney, and was never advised to seek the approval of respondent’s counsel before speaking with the respondent.
On February 27, 2001, one day before the court hearing regarding temporary detention, Dr. Silverman arrived at the prison where Louhisdon was being held and interviewed Louhisdon. Louhisdon did not know that Dr. Silverman wished to speak with him until he was brought to meet this stranger who had arrived without warning at the prison. Dr. Silverman spoke with Louhisdon without first speaking to Louhisdon’s appointed counsel and obtaining his approval for such an interview. If such a request had been made to Attorney Farrrington, it would have been denied, because it is Attorney Farrington’s routine practice in these cases to recommend that his clients not meet with the Commonwealth’s expert prior to the probable cause hearing.
This Court finds that the Assistant District Attorney responsible for this petition knew that CPCS would appoint an attorney to represent Louhisdon promptly after the February 21 hearing, and that she could learn who had been appointed by calling CPCS. She also knew or reasonably should have known from past experience that some of the attorneys appointed by CPCS in sexual dangerousness petitions recommend to their clients that they not meet with the Commonwealth’s experts until after probable cause has been found. She also knew" that the Commonwealth’s experts prefer to base their opinions, at least in part, on their interview of the respondent.
The Assistant District Attorney knew, or should have known, that Dr. Silverman wanted to interview the respondent, yet she failed to provide Dr. Silverman with the name of respondent’s counsel, which she easily could have learned. She also failed to tell Dr. Silverman not to speak to the respondent without the prior approval of respondent’s counsel. She knew, or should have known, that her failure to provide Dr. Silverman with the name of respondent’s counsel and her failure specifically to direct Dr. Silverman not to speak to the respondent without the approval of his attorney substantially increased the likelihood that Dr. Silverman would speak with the respondent without the knowledge or consent of counsel. She knew or should have known that such an interview increased the likelihood that the expert would find the respondent to be sexually dangerous and would add weight to his opinion if he made such a finding. She also knew that, if counsel knew in advance of such an interview, there was a substantial risk that counsel would forbid such an interview.
DISCUSSION
Rule 4.2 of the Massachusetts Rules of Professional Conduct provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
Here, it is plain that the Assistant District Attorney knew that Louhisdon was represented by a lawyer at the time of Dr. Silverman’s interview of Louhisdon. While she may not have known the identity of Louhisdon’s attorney, she knew that an attorney had been appointed for him and that she could find out the name of the attorney if she wanted. See Comment 5, Mass.R.Prof.Conduct 4.2 (an inference of representation may be made where there is substantial reason to believe that the person is represented; “a lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious”); ABA Formal Op. 95-396, Communications with Represented Persons (1995) (“a lawyer may not avoid the need to secure consent of counsel by closing her eyes to circumstances that make it obvious that the person to be communicated with is represented with respect to the matter in question”).
She also knew that Dr. Silverman wanted to speak with the respondent, yet she knowingly permitted Dr. Silverman to speak with Louhisdon without the consent of Louhisdon’s attorney. Dr. Silverman, as an expert retained to offer an opinion, was acting as her agent with respect to this interview. His purpose was *24 to interview the respondent and prepare a report of his findings for the District Attorney and, if favorable to the Commonwealth, for the Court. While his opinion was his own, she had direct supervisory authority over Dr. Silverman regarding what he saw and what he did. “[I]f the lawyer has direct supervisory authority over the investigator, then in the context of contacts with represented persons, the lawyer would be ethically responsible for such contacts made by the investigator if she had not made reasonable efforts to prevent them . . . ; if she instructed the investigator to make them . . . ; or if, specifically knowing that the investigator planned to make such contacts she failed to instruct the investigator not to do so . . .” ABA Formal Op. 95-396, Communications with Represented Persons at 7. This Court recognizes that Dr. Silverman was retained as an expert, not an investigator, but his interview of the respondent in this matter is closely analogous to an interview conducted by an investigator and should be treated the same under Rule 4.2.
The District Attorney contends that an expert witness retained by the Commonwealth should not be treated as her agent. If this were the case, then a defense attorney in a negligence case may permit her expert witness to interview the plaintiff without the knowledge or approval of plaintiffs attorney, and to have the expert testify as to what the plaintiff said. This conduct plainly runs afoul of Rule 4.2, and it is no different from what happened in this case. The only difference is that the stakes here are higher. In the negligence case, only money is at issue; here, the issue is a man’s liberty.
The District Attorney also contends that time was of the essence and that exigency justifies Dr. Silverman’s interview. This Court is aware of no exception in Rule 4.2 for exigency. Moreover, there was no true exigency. The Department of Corrections notified the Plymouth County District Attorney’s Office by letter on September 14, 2000 that Louhisdon was scheduled to be released on March 23, 2001. The District Attorney should know from experience that the actual release date often is earlier than the scheduled release date. Yet, the petition in this case was not filed until February 20, 2001, and it was this delay in filing that created the urgency for Dr. Silverman’s expert report. The District Attorney cannot delay in filing the petition, and then ask for the Rules of Professional Conduct to be put aside because time was running out. Moreover, there was no requirement that Dr. Silverman interview the respondent before issuing his report; the District Attorney’s Office has often filed an expert report in support of temporary detention without the benefit of such an interview. The Supreme Judicial Court in Bruno recognized that time would often be of the essence when temporary detention was sought and that the expert opinion “need not be extensive, but it must establish probable cause as to those elements of proof.” Commonwealth v. Bruno, 432 Mass. at 511.
This Court, therefore, finds that the Assistant District Attorney violated Rule 4.2 by permitting Dr. Silverman to interview Louhisdon about the subject matter of this petition, without the knowledge or consent of Louhisdon’s counsel, after the petition had been filed, knowing that Louhisdon had appointed counsel. This Court also finds that Louhisdon would be substantially prejudiced if any factfinder were allowed to consider the expert report or testimony that constituted the fruits of this ethical violation. In view of this ethical violation and the consequent prejudice, there is only one appropriate remedy that can place the respondent in the same position he would have been in had the ethical violation never occurred — the exclusion of Dr. Silverman’s report and testimony. Consequently, this Court allows Louhisdon’s motion to exclude Dr. Silverman’s report and testimony; it shall not be admissible for any purpose in this proceeding. See generally Hurley v. Modern Continental Construction Company, Inc., 1999 WL 95723 (D.Mass. 1999).
This Court understands that the Commonwealth had planned to call Dr. Silverman as its expert witness in the probable cause hearing. In view of the allowance of Louhisdon’s motion, this Court will somewhat delay that probable cause hearing to give the Commonwealth adequate time to find a new expert, recognizing that any such delay needs to be short in view of the Supreme Judicial Court’s admonition that, “absent unusual circumstances, a probable cause hearing should commence no later than ten business days after a temporary commitment order is made under §12(e).” Commonwealth v. Bruno, 432 Mass. at 513. This Court will give the Commonwealth ten business days from the date of this Order for the probable cause hearing, which shall be held on April 12, 2001.
ORDER
After hearing, for the reasons stated above, this Court FINDS:
The Assistant District Attorney violated Rule 4.2 by permitting Dr. Silverman to interview Louhisdon about the subject matter of this petition, without the knowledge or consent of Louhisdon’s counsel, after the petition had been filed, knowing that Louhisdon had appointed counsel.
Louhisdon would be substantially prejudiced if any factfinder were allowed to consider the expert report or testimony that constituted the fruits of this ethical violation.
In view of these findings, this Court ORDERS:
Louhisdon's motion to exclude Dr. Silverman’s report and testimony is ALLOWED; it shall not be admissible for any purpose in this proceeding.
The probable cause hearing on this petition shall be held on April 12, 2001.

 Since Dr. Silverman was first retained on February 21, it appears that the Commonwealth filed the petition without the benefit of any expert opinion regarding sexual dangerousness.